IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA EX REL. JAMES E. LARKIN,** | Case No. 1:17-cv-328 |
| Plaintiffs, | **FILED UNDER SEAL** |
| | **JUDGE DLOTT** |
| vs. | |
| **DARLING INGREDIENTS INC.,** | |
| Defendant. | |

**FIRST AMENDED COMPLAINT**

## INTRODUCTION

1. This is a civil action brought on behalf of the United States of America against Defendant Darling Ingredients Inc. ("Defendant," "Darling" or "the Company") under the False Claims Act, 31 U.S.C. §§ 3729-33 (the "FCA"), to recover damages from Darling's and Darling's predecessors' underpayment of rebates for used cooking oil removed from certain Army and Air Force Exchange Service ("AAFES") facilities.

## JURISDICTION & VENUE

2. This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C §§ 1331 and 1345, and pursuant to the Court's general equitable jurisdiction.

3. Section 3732(a) of the FCA provides that "[a]ny action under section 3730 may be brought in any judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant can be found, resides, transacts business, or in which any act proscribed by

section 3729 occurred." The acts complained of herein occurred at numerous government installations, facilities, and military bases across the country, including Wright-Patterson Air Force Base in Montgomery and Greene counties in Ohio, and the VA Hospital at 3200 Vine Street, Cincinnati, Ohio, both of which are located within this judicial district. In addition, Defendant transacts business within this district.

4. Under the FCA, this complaint is to be filed *in camera* and remain under seal for a period of at least sixty (60) days and shall not be served on the Defendants until the Court so orders. The Government may elect to intervene and proceed with the action within sixty (60) days after it receives both the complaint and material evidence and information.

5. Relator and his counsel have met with the Government to disclose the allegations in this complaint. Relator has also served the Government with a copy of this complaint and a written disclosure statement setting forth the evidence supporting his claims. Relator brings this case based upon his personal knowledge, and is an original source for his allegations.

## THE PARTIES

6. Defendant Darling Ingredients, Inc. is a global developer and producer of sustainable natural ingredients from edible and inedible bio-nutrients, creating a wide range of ingredients and customized specialty solutions for customers in the pharmaceutical, food, pet food, feed, industrial, fuel, bioenergy, and fertilizer industries. Its principal executive office is located at 5601 North MacArthur Boulevard, Irving, Texas, 75038.

7. With operations on five continents, Darling collects and transforms all aspects of animal by-product streams into useable and specialty ingredients, such as gelatin, edible fats, feed-grade fats, animal proteins and meals, plasma, pet food ingredients, organic fertilizers, yellow grease, fuel feedstocks, green energy, natural casings, and hides. Darling also recovers

and converts used cooking oil and commercial bakery residuals into valuable feed and fuel ingredients. In addition, Darling provides grease trap services to food service establishments, environmental services to food processors, and sells restaurant cooking oil delivery and collection equipment.

8. Darling operates over 130 processing and transfer facilities in the United States to produce finished products such as protein (primarily meat and bone meal ("MBM") and poultry meal ("PM")), fats (primarily bleachable fancy tallow ("BFT"), poultry grease ("PG") and yellow grease ("YG")), bakery by-products ("BBP") and hides, as well as a range of branded and value-added products. Darling sells these products in North America and throughout the world, primarily to producers of animal feed, pet food, biodiesel, fertilizer and other consumer and industrial ingredients, including oleo-chemicals, soaps and leather goods, for use as ingredients in their products or for further processing.

9. Darling does business under the names "Darling," "Darling Ingredients", "Griffin Industries," "Dar Pro Solutions," and "Dar Pro." Darling is incorporated under the laws of the State of Delaware.

10. Relator James Larkin is a citizen and resident of the Commonwealth of Kentucky, and was a National Brand Manager at Darling and before the acquisition, at one of Darling's predecessors. In addition to its National Brand Managers, Darling has regional sales and account managers around the country, all responsible for managing accounts with restaurants who supply Darling with used cooking oil.

11. Once retrieved, the used cooking oil is taken to one of Darling's processing facilities, where it is heated, settled, and purified for use as an animal feed additive or is further processed into biodiesel. Products derived from used cooking oil include Yellow Grease,

3

biodiesel, and Fat for Fuel®, which uses grease as a fuel source for industrial boilers and dryers.

12. A majority of Darling's used cooking oil is acquired through standing contracts with its suppliers (restaurants, groceries, etc.), often with multi-year terms. These contracts usually require Darling to pay a certain rate for the used cooking oil.

13. Darling buys significant quantities of used cooking oil from the United States. For example, Darling's used cooking oil suppliers include food service establishments on Air Force and Army bases.

14. During this country's first hundred years, soldiers had to buy provisions from peddlers who followed the army. In an effort to provide more reliable goods to its soldiers, the War Department issued General Order Number 46 in 1895, which instructed post commanders to establish exchanges for the sales of goods. The Army's exchanges were consolidated under the umbrella of the Army Exchange Service in 1941. After the creation of the Air Force, the exchange expanded and became the Army & Air Force Exchange Service, commonly known as AAFES.

15. AAFES operates more than 3,100 facilities, including a variety of retail stores, restaurants, and theaters, across 50 U.S. states and 33 countries. Of significance in this case, it owns and operates nearly 1,500 quick-serve restaurants.

16. All of AAFES' earnings are invested back into the military community. Two-thirds of the earnings support morale, welfare and recreation programs for the armed services, while the rest is used to pay for new and existing facilities.

## FACTUAL ALLEGATIONS

17. Defendant collects, and rebates its customers for, used cooking oil from restaurants, food establishments, and grocery stores around the country. The frequency of its collection is determined by the volume of oil generated by the food service establishment.

18. Once retrieved, the used cooking oil is taken to one of Defendant's processing facilities, where it is heated, settled, and purified for use as an animal feed additive or is further processed into biodiesel.

19. Defendant buys used cooking oil from the United States. Specifically, Defendant's used cooking oil suppliers include food service establishments on Air Force and Army bases owned by the Army & Air Force Exchange Service, or AAFES.

20. Since at least 2008 Darling and its predecessors have had contracts with AAFES for the collection of used cooking oil at restaurant locations on bases in Alabama, Arkansas, Florida, Georgia, Indiana, Kentucky, Louisiana, Mississippi, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, and Virginia, California, Colorado, Idaho, Illinois, Iowa, Kansas, Michigan, Missouri, Nebraska, Nevada, New Jersey, New York, Pennsylvania, Washington, and Wyoming. Relator worked as a brand manager with responsibility for the AAFES account.

21. On or about November 24, 2014, AAFES entered into Contract Number 7300166192 with Darling for the collection of used cooking oil at various AAFES facilities (the "2014 Darling-AAFES Contract"). This contract consolidated all AAFES facilities covered under Darling's and its predecessors' prior contracts with AAFES for used cooking oil collection services. Under this contract, Darling agreed to pick up and pay for grease at fast food locations on numerous Air Force or Army bases or installations, including, but not limited to: Anacostia

Bolling, APG BK, Barksdale AFB, Beale AFB, Buckley AFB, Cannon AFB, Columbus AFB Mississippi, Davis-Monthan Exchange, Dover AFB, Dyess Exchange, Edwards AFB, Ellsworth, Eglin AFB, F.E. Warren Exchange, Fairchild, Fort Leonard Wood, Fort Polk, Fort Belvoir, Fort Benning, Fort Bliss, Fort Bragg, Fort Campbell, Fort Carson, Fort Dix, Fort Drum, Fort Gordon, Fort Hamilton, Fort Hood, Fort Huachuca, Fort Irwin, Fort Jackson, Fort Knox, Fort Leavenworth, Fort Lee, Fort Lewis, Fort Meade, Fort Riley, Fort Rucker, Fort Sam Houston, Fort Sill, Fort Stewart, Goodfellow AFB, Grand Forks, Hill Exchange, Holloman AFB, JB Andrews, JB Charleston, JBSA Randolph AFB, Keesler AFB, Kirtland AFB, Langley AFB, Little Rock AFB, Lockland AFB, Los Angeles Exchange, Luke AFB, Macdill AFB, Malmstrom AFB, Maxwell, McChord, McClellan, McConnell AFB, McGuire AFB, Minot AFB Exchange, Moody AFB, Mountain Home, NAS Carswell, Nells Exchange, Offutt AFB, Patrick AFB, Peterson AFB, Randolph AFB, Redstone Arsenal, Scott AFB, SGA Florida Puerto Rico, Shaw AFB, Sheppard Exchange, Tinker AFB, Travis AFB, Tyndall Exchange, USAFA Exchange, USMA/West Point, Vanderberg AFB, Waller Hall Food Court, Warner Robins, Whiteman AFB, and Wright-Patterson AFB.

22. The contracts with Darling and its predecessors stated that they would "pay the Exchange promptly and in accordance with stated terms in connection with the performance of the contract." The contracts further stated that "[a]ny request by the contractor for adjustment" of the agreed upon payment terms "must be made in writing to the contracting officer." The contracts required Darling and its predecessors to provide "a sales report recap detailing the total pounds and price per pound of all commodities covered by this contract." Darling and its predecessors were to send a "copy of the certified weight tickets and a listing of payment amount for each installation" to AAFES in care of Adrian Hinson, 3911 S. Walton Walker

Blvd., Dallas, TX 752236. The contracts further stated that the "sale price for each pick up of the UVO/Yellow Tallow will be based on the most recent prices published in the **Official Board Markets price** from Jacobsen index for UVO (Use Vegetable Oils) Yellow Tallow for the current month."

23. During the relevant time period of this Complaint, Darling and its predecessors underpaid rebates to AAFES and submitted inaccurate reports to AAFES based on the terms of the parties' contracts.

## THE FALSE CLAIMS ACT

24. The False Claims Act was enacted during the American Civil War. Government contractors had not been honoring government contracts. An overburdened federal government lacked the resources to sue these contractors, so Congress empowered private citizens to bring claims on behalf of the government in exchange for a percentage of any recovery.

25. Since the Civil War, the False Claims Act has been amended numerous times and has been used to make substantial government recoveries.

26. The current version of the FCA provides:

(a) Liability for Certain Acts.—

    (1) In general.—Subject to paragraph (2), any person who—
        (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

        (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

        (C) conspires to commit a violation of subparagraph (A), (B), (D), (E),(F), or (G);

        (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

7

    (E)    is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

    (F)    knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

    (G)    knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S. Code § 3729. Pursuant to Federal Civil Penalties Inflation Adjustment Act in 2015, the civil penalties described above were increased to between $10,957 and $21,916 for each act in violation of the statute.

**First Cause of Action**
**False Claims Act 31 U.S.C. § 3729(a)(1)(D)**

27.    Relator repeats and realleges the preceding allegations as if fully set forth herein.

28.    Upon information and belief, since 2008 Darling and its predecessors took possession of used cooking oil from government facilities for which they were contractually obligated to rebate the United States and with reckless disregard delivered or caused to be delivered less than the full amount of money due to the United States under the terms of the parties' contracts.

29.    Each time Darling and its predecessors took oil for which they underpaid the amount due to the United States under the terms of the parties' contracts, they violated the FCA.

30.    By virtue of these violations of the FCA, the United States has suffered damages it is entitled to recover and statutory penalties.

## Second Cause of Action
## False Claims Act 31 U.S.C. § 3729(G)

31. Relator repeats and realleges the preceding allegations as if fully set forth herein.

32. Darling and its predecessors were contractually required to make monthly reports listing the amount of used cooking oil it retrieved from the government's restaurants and other locations, as well as the amount of payment due to the United States for each of these locations.

33. Upon information and belief, since 2008 Darling and its predecessors, with reckless disregard, submitted monthly reports to the United States that inaccurately reported rebates for grease that Darling and its predecessors procured from restaurants and other locations owed by the government and at government facilities.

34. By virtue of these violations of the FCA, the United States has suffered damages it is entitled to recover and statutory penalties.

## PRAYER FOR RELIEF

35. Relator repeats and realleges the preceding allegations as if fully set forth herein and prays:

(a) That this Court enter judgment against Defendant for actual damages the United States has sustained because of Defendant's and its predecessors' actions, the statutory multiplier, civil penalties, and the costs of this action, with interest, including the costs of the United States for its expenses related to this action;

(b) That the Relator be awarded all costs incurred, including reasonable attorneys' fees;

(c) That, in the event that the United States Government continues to proceed with this action, the Relator be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action or settlement of the claim;

(d) That in the event the United States does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall not be less than 25% nor more than 30% of the proceeds of the action or the settlement;

(e) That Relator be awarded prejudgment interest;

(f) That a trial by jury be held on all issues; and

(g) That the United States Government and Relator receive all relief, both in law and in equity, to which they may reasonably appear entitled.

Dated this 22nd day of April, 2020

*[signature]*

Victor A. Walton, Jr. (0055241)
  Trial Attorney
Jacob D. Mahle (0080797)
Jeffrey A. Miller (0068815)
VORYS, SATER, SEYMOUR AND PEASE
  LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, Ohio 45202
Telephone: (513) 723-4089
Facsimile: (513) 852-7883
E-mail:   vawalton@vorys.com
          jdmahle@vorys.com
          jamiller@vorys.com

*Counsel for Relator James E. Larkin*

## CERTIFICATE OF SERVICE

I certify that on April 22, 2020, the foregoing First Amended Complaint was presented to the United States District Court for filing. I certify on the same date that a copy of the foregoing was sent by electronic mail to the following:

Andrew M. Malek<br>
Assistant United States Attorney<br>
303 Marconi Blvd., Suite 200<br>
Columbus, OH 43215<br>
Email: Andrew.Malek@usdoj.gov

_____
Victor A. Walton, Jr.